CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAR 0 6 2008
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TERRANCE HENDERSON, | ) | |
| | ) | Civil Action No. 7:07-cv-00266 |
| Plaintiff, | ) | |
| | ) | |
| COMMONWEALTH OF VIRGINIA, et al., | ) | |
| | ) | By: Hon. Michael F. Urbanski |
| | ) | United States Magistrate Judge |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Proceeding pro se, plaintiff Terrance Henderson filed this civil rights complaint pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343, alleging that defendants employed at Red Onion State Prison ("ROSP") in Pound, Virginia, and with the Virginia Department of Corrections ("VDOC") violated his constitutional rights in several respects. By Memorandum Opinion and Order entered January 23, 2008, the court found that it was unable to resolve Henderson's claim that ROSP Warden, Tracy S. Ray, violated his First Amendment rights by refusing him a commercially distributed photograph and, therefore, ordered an evidentiary hearing on the same.[1] By Order dated January 23, 2008, the court referred all dispositive matters to the undersigned Magistrate Judge to submit a report setting forth proposed findings of fact, conclusions of law, and a recommended disposition and designated him to preside over any necessary evidentiary hearings. An evidentiary hearing was conducted on March 4, 2008.

Based on the evidentiary hearing testimony, the undersigned concludes that Henderson has not met his burden of proving that Warden Ray violated his First Amendment rights. Therefore, the

---

[1] The court dismissed all of Henderson's other claims in that same Memorandum Opinion and Order.

-1-

undersigned recommends that Warden Ray's motion for summary judgment be granted and Henderson's petition for relief be dismissed.

## I.

Warden Ray testified at the evidentiary hearing that Henderson received a small commercial photograph of a woman clad in a bikini as well as a coupon for another free photograph from Acme Publications in August of 2005.[2] Ray returned the photograph to Acme Publications and sent Henderson a notification advising him of the disapproval.[3] Ray testified that he returned the photograph because it was a small commercial photograph with "value" in the prison system and could be bartered. Ray stated that ROSP had an interest in limiting bartering for security and safety reasons. Ray testified that the content of this particular photograph or whether Henderson paid for it was not the principal issue, rather the "form of the publication" and "how it is used" created a problem. Ray testified that if Henderson had proceeded through the applicable procedures, which he did not, and the picture had arrived in a catalog format, it would have been allowed.

Ray further testified that inmates are permitted to receive subscriptions to magazines that feature photographs of nude and semi-nude women. He explained that, even though such

---

[2] The undersigned notes that Ray testified that this issue came to his attention in August of 2005; however, the record, including the notification to Henderson and Henderson's grievances, indicate that the incident occurred in February of 2007.

[3] Ray contends that Henderson was denied the photograph pursuant to Division Operating Procedure ("DOP") 851.6(G) which states: "Sexually explicit material, nude or semi-nude pictures, commercially distributed or personal photographs that by the nature of content poses a threat to personal or institutional safety and security, or violates DOP #852, are prohibited." Because DOP 852 is incorporated by reference into DOP 851.6(G), the undersigned notes several relevant sections. DOP 852-4.0 states that inmates "should not be allowed to subscribe to, order and receive publications direct from a legitimate source so long as they do not pose a threat to the security, discipline, and good order of the facility." DOP 852-7.7 also states that a publication will be denied as unauthorized if "[t]he publication is unsolicited, generally mailed, or mass mailed material, such as catalogs, sales brochures, advertising fliers, etc., and preapproval was not obtained by the inmate." The undersigned further notes that Henderson's grievances indicate that the policy governing this issue was IOP 851-7.6 and Ray testified at the evidentiary hearing that policy 851 was in effect at the time of the incident; however, the content of the DOP 851.6(G) and IOP 851-7.6 appears to be identical.

photographs are more sexually explicit than the photograph at issue in this case, a magazine is bound and a larger publication and is, accordingly, more difficult to secretly transfer or "move" between inmates. Ray further noted that inmates are required to purchase the aforementioned magazines; however, a photograph such as the one in question is free, thus, any barter would result in a pure profit for the inmate. Ray also noted that if an inmate properly received a magazine featuring nude or semi-nude photographs and proceeded to cut the photographs out of the magazine, such photographs would also be considered contraband at that point and would be prohibited.

Henderson declined to testify, give a statement, make any argument, or offer any other evidence at the evidentiary hearing.

## II.

As a prison inmate, Henderson retains certain First Amendment rights, including the right to receive written publications. Thornburgh v. Abbott, 490 U.S. 401, 407-08 (1989). However, prisons may adopt regulations that infringe upon an inmate's constitutional rights as long as the regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 87 (1987) (internal quotations omitted). In order to determine whether the regulation relied on by the defendants is constitutionally permissible, the court must consider four factors: (1) whether the disputed regulation is logically connected to the legitimate government interest invoked to justify it; (2) whether the inmate has alternative means of exercising the right in question; (3) the impact that accommodation of the asserted right would have on other inmates, prison officials, and the allocation of prison resources; and (4) whether there is a ready alternative that would fully accommodate the inmate's rights. Turner, 482 U.S. at 89-90. When applying these factors, the court must "respect the determinations of prison officials." United States v. Stotts, 925 F.2d 83, 86 (4th

Cir. 1991). The plaintiff bears the ultimate burden of establishing that a prison regulation is unconstitutional. See Hause v. Vaught, 993 F.2d 1079, 1082 (4th Cir. 1993).

Applying the Turner factors to this case, the court concludes that DOP 851.6, and the attendant sections of DOP 852, are "reasonably related to legitimate penological interests." Turner, 482 U.S. at 87. Considering the first Turner factor, the undersigned finds that there is a logical connection between the regulations and the legitimate governmental interests underlying the regulations. The VDOC has a legitimate interest in maintaining security, discipline, and order in its prisons. See Hodges v. Virginia, 871 F. Supp. 873, 877 (W.D. Va. 1994) ("[t]he interests articulated by the VDOC, security, discipline, order, public safety, and rehabilitation, need no defense"), rev'd on other grounds, Montcalm Publ. Corp. v. Beck, 80 F.3d 105 (4th Cir. 1996). As Warden Ray specified in his Level I response to Henderson's grievance in this matter, the photograph Henderson requested could "pose a threat to personal or institution safety and security in violation of [policy]" because the photograph "could be used for barter." It does not defy reason to conclude that the possession and exchange of items that are considered valuable can potentially result in thefts, assaults, and other disruptive activities by inmates that threaten the security and safety of inmates and staff. Ray further testified at the evidentiary hearing that a commercial photograph such as the one at issue is smaller and easier to barter with than a magazine. Plus, inmates have a greater incentive to barter the photographs because the photographs are free and, thus, they have the potential to gain a pure profit. See Lovett v. Tyszkiewicz, 211 F.3d 1269 (Table) (6th Cir. 2000) (finding that prison regulation which prohibited inmate from receiving two 4x6 photographs of women exposing their bare backsides did not violate inmate's First Amendment rights, as it was reasonably related to legitimate penological interests). Accordingly, it is clear that penological

interests are negatively impacted by publications that promote the commission of institutional criminal activity, such as the bartering of photographs, and DOP 851.6 and 852 are logically related to preventing such security and disciplinary concerns.[4]

Considering the second factor, Henderson has alternative means of exercising his right to receive publications, since the DOPs at issue permit a broad range of publications, including magazines containing photographs of nude and semi-nude women, to be received and read. Considering the third factor, the photographs, if permitted, could potentially invite disruptive conduct, such as bartering. Moreover, the potential influx of these photographs could become a burden on prison resources. See Jackson v. Frank, 509 F.3d 389, 391-92 (7th Cir. 2007) (policy preventing prisoners from possessing individual, commercially published photographs did not violate an inmate's First Amendment rights, where policy rationally advanced prison's interest in saving staff resources and prisoner had alternative means of exercising his right through subscribing to magazines). Considering the fourth factor, the undersigned finds that Henderson fails to point to an alternative that fully accommodates his rights at "de minimis cost to the valid penological interest" as required under Turner, 482 U.S. at 91.

Therefore, the undersigned recommends a finding that DOP 851.6 and 852, as applied to prohibit Henderson's possession of a commercial photograph of a semi-nude woman, are constitutional and that Ray's action in returning the photograph in this case to the publisher was lawful. Respecting "the determinations of prison officials," Stotts, 925 F.2d at 86, both the DOPs at issue are, and Ray's action pursuant thereto was, "reasonably related to legitimate penological

---

[4] The undersigned further notes that the photograph appears to have been unsolicited in violation of DOP 852-7.7, and that Henderson fails to allege, much less prove, that he secured pre-approval for the photograph through the appropriate procedures as required by DOP 852-7.7 and DOP 852-7.0.

-5-

interests," Turner, 482 U.S. at 87. Accordingly, it is recommended that Henderson's claim be dismissed.

## III.

The Clerk of the Court is directed immediately to transmit the record in this case to the Honorable Glen E. Conrad, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is hereby directed to send copies of this Report and Recommendation to Henderson and counsel of record for Warden Ray.

**ENTER:** This 5th day of March, 2008.

/s/ [signature]
United States Magistrate Judge